UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY JONES, Jr., CDCR #BI-0619,<br><br>        Plaintiff,<br><br>vs.<br><br>RAYMOND MADDEN, Warden; KATHLEEN ALLISON, Secretary, CDCR; KRISTIN HAAS, Senior Psychologist, Richard J. Donovan Correctional Facility; J. SALAZAR, Correctional Sergeant; C. TAYLOR, Correctional Officer; J. LUGO, Correctional Officer; and DOCTOR ENFIELD, Clinician, Doctor of Mental Health,<br><br>        Defendants. | Case No.: 22-CV-1814 TWR (KSC)<br><br>**ORDER:**<br><br>**(1) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A;**<br><br>**(2) DISMISSING DEFENDANTS MADDEN, ALLISON, AND HAAS FOR FAILING TO STATE A CLAIM; AND**<br><br>**(3) DIRECTING CLERK TO ISSUE SUMMONS AND WAIVER OF SERVICE FORMS PURSUANT TO Fed. R. Civ. P. 4(b), (d)(1)** |

   Presently before the Court is Plaintiff Larry Jones, Jr.'s Complaint. (*See* ECF No. 1, "Compl.") Plaintiff's Complaint, filed pursuant to 42 U.S.C. § 1983, alleges that Defendants Raymond Madden, Kathleen Allison, Kristin Haas, J. Salazar, C. Taylor, J. Lugo, and Doctor Enfield violated Plaintiff's rights under the Eighth Amendment and

Fourteenth Amendment. (*See generally id.*) Because Plaintiff is a prisoner seeking redress from officers or employees of a government entity, an initial review of his[1] Complaint is required by 28 U.S.C. § 1915A. For the reasons set forth below, the Court **DISMISSES IN PART** Plaintiff's Complaint **WITHOUT PREJUDICE**.

## BACKGROUND

### I. Procedural History

Plaintiff is an inmate currently housed at California State Prison, Los Angeles County ("CSP-LAC"). (*See generally* Compl.) Plaintiff, proceeding pro se, initiated this action on November 17, 2022, (*see generally id.*), but did not initially pay the $402 civil filing fee required by 28 U.S.C. § 1914(a) or file a motion to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (*See generally* Docket.) Accordingly, the Court dismissed the action on November 28, 2022, but granted Plaintiff leave to pay the civil filing fee or move to proceed IFP. (*See* ECF No. 5.) On December 14, 2022, Plaintiff timely paid the $402 initial civil filing fee, and the Court reopened the matter. (*See* ECF No. 6.)

Plaintiffs' Complaint names seven Defendants: (1) Raymond Madden, Warden at the Richard J. Donovan Correctional Facility ("RJD"); (2) Kathleen Allison, Secretary of California Department of Corrections and Rehabilitation ("CDCR"); (3) Kristin Haas, Senior Psychologist at RJD; (4) J. Salazar, Correctional Sergeant at RJD; (5) C. Taylor, Correctional Officer; (6) J. Lugo, Correctional Officer; and (7) Dr. Enfield, Clinician and Doctor. (*See* Compl. at 2–3.)[2] Plaintiff brings claims under the Eighth and Fourteenth Amendments for cruel and unusual punishment, failure to protect, and failure to provide a licensed doctor. (*Id*. at 4, 13.)

---

[1] In his Complaint, Plaintiff—who identifies as non-binary and transgender—uses he/him pronouns to refer to himself. The Court uses the same pronouns in this Order.

[2] To avoid ambiguity, citations to the Complaint refer to the CM/ECF pagination electronically stamped at the top of each page.

## II. Factual Allegations

Plaintiff defines himself as a "mentally ill, disabled, non-binary transgender" individual. (Compl. at 4.) Although Plaintiff is currently housed at CSP-LAC, from April to June of 2022, Plaintiff was housed at RJD. (*Id.* at 1, 4.) While at RJD, Plaintiff claims he requested a "transgender access card" from correctional officers on several occasions pursuant to the Transgender Dignity Act.³ (*See id.* at 4.) The officers allegedly refused and responded by labeling Plaintiff a "snitch, faggot, and sex offender." (*See id.* (internal quotation marks omitted).) Plaintiff claims that these officers "spread[] rumors Plaintiff was a Rap[i]st" and told inmates who were gang members that Plaintiff's criminal conviction was for a "sexual offense" that involved a minor, which caused gang members to threaten, sexually harass, and assault Plaintiff. (*Id.* at 4–5.) Plaintiff was moved to the sensitive needs yard ("SNY") because his "gender identity," "'R' suffix for indecent exposure," and "past gang history" made him "vulnerable to sexual harassment, extortion, rape and physical assaults" by gang members. (*Id.* at 4.)

On July 24, 2022, Plaintiff claims he "witnessed the assault of numerous mentally ill prisoners" by Defendant J. Salazar, then a Correctional Officer, which "lasted over 30 minutes." (*Id.*) Plaintiff alleges Salazar "brutally beat and sodomized [an inmate] with a broom in the presence of Correctional Officer(s) C. Taylor and J. Lugo who[] failed to intervene, and or report the incident(s)." (*Id.*) A nurse purportedly witnessed this event and reported it to the correctional officers' supervisors. (*See id.* at 5–6.) Defendant Salazar was allegedly "caught . . . in the act" and "handcuffed and escorted out of the building." (*Id.* at 6.) Plaintiff "yelled outside of his cell door that he would write everything up and that he'd seen everything." (*Id.*)

Later that evening, Plaintiff alleges he was "violently dragged out of his cell and attacked" by Defendants Taylor and Lugo. (*Id.*) They purportedly strapped Plaintiff to a

---

³ The Transgender Respect, Agency, and Dignity Act is codified at Cal. Penal. Code §§ 2605, 2606.

gurney and "started pressing down on his chest with all their body weight." (*Id.*)  Plaintiff "began screaming for them to stop" but they refused and "continued while making threats and calling Plaintiff a snitch." (*Id.*)  They then asked Plaintiff where his phone recording of the "patient being sodomized" was located. (*Id.*)

The next day Plaintiff was charged with "possession of a cellular phone," which he had used to "capture[] the sexual assault." (*Id.* at 7.)  Plaintiff claims he was "coerced into pleading guilty and threatened with death if he did not comply." (*Id.*)  That same day, Sergeant Parra[4] interviewed Plaintiff about his safety concerns regarding Defendants Salazar, Taylor, and Lugo. (*Id.* at 6.)  Parra allegedly stopped recording the interview whenever Plaintiff mentioned Defendants' names and told Plaintiff that he would not be placed in protective isolation unless he "mention[ed] other inmates['] names." (*Id.* at 7.)  "Plaintiff fearfully gave [Parra] random names" which Plaintiff claims placed him in greater danger of harm from gang members and officers. (*Id.*)  Plaintiff was later placed in Administrative Segregation ("ad-seg") where he was denied "access to grievances and writing material." (*Id.* at 7–8.)

On August 1, 2022, Plaintiff claims he was assaulted by correctional officers for filing a grievance and then charged with assaulting an officer. (*See id.* at 8.)  Plaintiff was then "interviewed by medical personnel," at which point he notified his mental health clinician, Defendant Dr. Enfield, that some of his injuries were from a previous assault by a different correctional officer. (*Id.*)  According to Plaintiff, Dr. Enfield refused to document these claims in Plaintiff's mental health file. (*See id.*)

Plaintiff was then "placed in a crisis bed," at which time he learned that Defendant Salazar had been promoted to Sergeant. (*Id.*)  At this time Salazar allegedly began "continuously threaten[ing] Plaintiff to 'shut up' or he'd rape him and slit his throat." (*Id.*)  Plaintiff claims Salazar also told inmates who were gang members that Plaintiff was a

---

[4] Parra is not a named Defendant.

"child molester" and a "snitch," which caused these inmates to subject Plaintiff to "threats and extortion," including "tap[ping] on [Plaintiff's] door window while he sat naked in a smock and request[ing] he'd show them his rectum." (*Id.* at 8–9.)

On August 8, 2022, Plaintiff was placed back in ad-seg. (*See id.* at 9.) While there, he claims he learned that Dr. Enfield was an "unlicensed mental health clini[c]ian fraudulently posing as a [doctor]." (*Id.*; *see also id.* at 13 ("Defendant Enfield was in actuality an Intern posing as a Doctor . . . .").) Plaintiff alleges Dr. Enfield "fabricated Plaintiff's diagnosis and changed it to 'malingering,'" "attempted to coerce Plaintiff into going back to suicide watch," and refused to sign a release allowing the presence of attorneys at Plaintiff's treatments. (*Id.* at 9–10.) He further claims that Dr. Enfield "concealed and aided" Defendant Salazar and other officers and "refused Plaintiff adequate [mental health] treatment." (*Id.* at 13.) As for Defendant Haas, the Senior Psychologist, Plaintiff claims she "refused to enforce the Health Care Department Operations Manual and the California Code of Regulations mandates," "supervise the 'intern,'" or provide Plaintiff with a "licensed physician" as required by statewide policies. (*Id.* at 13.)

Furthermore, Plaintiff alleges Defendants Allison, Madden, Lugo, and Taylor failed to report the use of force to supervisors as required under California Code of Regulations Title 15 Section 3268.1(a)(1), which "subjected Plaintiff to the threat of constant violence [and] sexual harassment at the hands of their fellow employees." (*Id.* at 11.) As evidence of Warden Madden's "deliberate[] indifferen[ce] to Plaintiff's safety," Plaintiff points to Defendant Salazar's promotion from Officer to Sergeant after Plaintiff "blew the whistle." (*Id.* at 12.) Finally, Plaintiff alleges Defendant Allison, the CDCR Secretary, was "deliberately indifferent to Plaintiff['s] safety" because she failed to issue an "administrative executive directive" ordering RJD to enforce the zero tolerance policy for security threat groups ("STG"s) under California Code of Regulations Title 15 Section 3023.1(a). (*Id.* at 10–11; *see also id.* at 5 (alleging Allison and Madden "refus[ed] to enforce the CDCR zero tolerance of . . . gangs policy thereby causing Plaintiff to become one of their many victims.").)

As a result of Defendants' actions, Plaintiff seeks injunctive and monetary relief. First, Plaintiff seeks an injunction preventing his transfer to any level three or four prison in which "STG gang members are operating or any CDCR facility and/or [RJD] until this matter is tried on the merits." (*Id.* at 18.) Second, Plaintiff seeks an injunction requiring Defendants to provide the Court with notice and good cause before Plaintiff is transferred to RJD or any level three or four prison. (*Id.*) Third, Plaintiff seeks an injunction "preventing Defendants from denying Plaintiff immediate transfer to Coalinga State Hospital to undergo mental health treatment." (*Id.*) As for monetary relief, Plaintiff seeks $50,000 in punitive damages from each Defendant and $100,000 in compensatory damages. (*Id.*) Prior to bringing this action, Plaintiff allegedly exhausted all forms of available relief from the proper administrative officials. (*Id.* at 17.)

## LEGAL STANDARD

Under 28 U.S.C. § 1915A, district courts must conduct preliminary screenings of all complaints filed by plaintiffs who are prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a); *see also Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). "'On review, the court shall . . . dismiss the complaint, or any portion of the complaint,' if it '(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.'" *Olivas v. Nevada ex rel. Dep't of Corrs.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (citation omitted).

/ / /

/ / /

/ / /

## ANALYSIS

### I. Eighth Amendment Claims

#### A. Claims Against Defendants Taylor and Lugo

Plaintiff's Eighth Amendment claims against Officers Taylor and Lugo involve the excessive use of force. (*See generally* Compl.) "[W]henever prison officials stand accused of excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). In analyzing an excessive force claim, courts consider the following factors: the need for the application of force, the relationship between the need and the amount of force used, the extent of the injury suffered, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *See id.* at 7.

Here, Plaintiff alleges that he was "violently dragged out of his cell and attacked" by Defendants Taylor and Lugo. (Compl. at 6.) These Defendants purportedly strapped Plaintiff to a gurney and "started pressing down on his chest with all their body weight." (*Id.*) Plaintiff "began screaming for them to stop" as his "chest [felt] like it [was] going to break" but they refused and "continued while making threats and calling Plaintiff a snitch." (*Id.*) As currently pleaded and liberally construed, the factual allegations in Plaintiff's Complaint involve plausible Eighth Amendment excessive force claims against Defendants Taylor and Lugo, which are "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915A(b)(1).

#### B. Claim Against Defendant Salazar

Plaintiff's Eighth Amendment claim against Sergeant Salazar involves a failure to protect. (*See generally* Compl.) Accordingly, Plaintiff must "objectively show that he was deprived of something sufficiently serious[] and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Thomas*

*v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (internal quotations and citations omitted); *see also United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (stating the Eighth Amendment "requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'"). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" to protect their safety, *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995), or by labeling prisoner a "snitch" in the presence of other inmates, *see Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989); *see also McDaniels v. United States*, 2018 WL 7501292, at *7 (C.D. Cal. Dec. 28, 2018) ("Spreading rumors about the nature of an inmate's conviction, or about conduct an inmate has engaged in while in prison, can violate the Eighth Amendment by placing a prisoner at great risk of assault.").

Plaintiff alleges that Defendant Salazar "continuously threatened Plaintiff to 'shut up' or he'd rape him and slit his throat." (Compl. at 8.) Plaintiff also claims Salazar told other inmates who were gang members that Plaintiff was a "child molester" and a "snitch" which caused these inmates to subject Plaintiff to "threats and extortion." (*Id.* at 8–9.) As currently pleaded and liberally construed, the factual allegations in Plaintiff's Complaint involves a plausible Eighth Amendment failure to protect claim against Defendant Salazar, which is "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915A(b)(1).

### C.     Claim Against Defendant Enfield

Plaintiff's Eighth Amendment claim against Dr. Enfield involves deliberate indifference to a serious medical need. (*See generally* Compl.) The Eighth Amendment requires that inmates have "ready access to adequate medical care." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). An individual violates the Eighth Amendment when they show "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of*

*Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff claims that he suffered from serious mental health issues, but that Defendant Enfield told Plaintiff he was "fabricating" his diagnosis and changed it to "malingering." (Compl. at 9.) He further claims that Dr. Enfield refused to document Plaintiff's claims, "attempted to coerce Plaintiff into going back to suicide watch," and "refused Plaintiff adequate [mental health] treatment." (*Id.* at 9, 13.) As currently pleaded and liberally construed, the factual allegations in Plaintiff's Complaint involve a plausible Eighth Amendment deliberate indifference claim against Defendant Enfield, which is "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; 28 U.S.C. § 1915A(b)(1).

### D.   *Claims Against Defendants Madden, Allison, and Haas*

However, the Court finds that Plaintiff has not alleged facts sufficient to state Eighth Amendment claims against Defendants Madden, Allison, and Haas. Plaintiff alleges Defendants Madden and Allison "refus[ed] to enforce the CDCR zero tolerance of . . . gangs policy," (Compl. at 5; *see also id.* at 10–11), and failed to report the use of force to supervisors as required by California's Title 15, (*id.* at 11). According to Plaintiff, this failure caused him to suffer "the threat of constant violence [and] sexual harassment at the hands of their fellow employees." (*Id.*) As to Defendant Haas, Plaintiff alleges that she "refused to enforce the Health Care Department Operations Manual and the California Code of Regulations mandates," "supervise the 'intern' [Dr. Enfield]," or provide Plaintiff with a licensed physician in violation of statewide medical policies. (*Id.* at 13.)

"To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (quoting *Sweaney*

*v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997)). Accordingly, "[v]iolations of state prison rules and regulations [typically] do not provide an independent cause of action." *Calhoun v. Cruz*, No. 2:20-CV-2209 DB P, 2021 WL 1338776, at *4 (E.D. Cal. Apr. 9, 2021) (citing *Ove*, 264 F.3d at 824; *Patterson v. Harrington*, No. 1:12-cv-0440 MJS, 2013 WL 3212413, at *5 (E.D. Cal. June 24, 2013) (finding "no authority to support . . . an implied private right of action under [California's] Title 15" and explaining that "[t]he existence of regulations governing the conduct of prison employees does not necessarily entitle an inmate to sue civilly for their violation")). Furthermore, "[a]n allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983." *Evans v. Skolnik*, 637 Fed. App'x 285, 288 (9th Cir. 2015).

Moreover, supervisory liability is not an independent cause of action under § 1983. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). A supervisor can only be liable for the acts of their subordinates if they too were "personally involved in the constitutional deprivation," or if the plaintiff can prove "a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *see also Hansen v. Black*, 855 F.2d 642, 646 (9th Cir. 1989). A sufficient causal connection exists if, for example, the supervisor "knowingly refused to terminate a series of acts by others which [defendant] reasonably knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001) (citations omitted), or if the supervisor "acquiesce[d] in [a] constitutional deprivation" or engaged in "conduct that showed a reckless or callous indifference to the rights of others," *Watkins v. City of Oakland, Cal.*, 145 F.3d 1087, 1093 (9th Cir. 1998).

Plaintiff may not attempt to hold Defendants Madden, Allison, and Haas liable without any factual allegations regarding their personal involvement in the constitutional violations or the causal connection between their wrongful conduct and the violations. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts,

not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights."); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  While Plaintiff alleges that Madden, Allison, and Haas failed to implement CDCR and Correctional Health Care policies, he does not allege that these Defendants in fact knew of unconstitutional conduct and refused to act.  *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) ("[A] claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is 'sufficient to state a claim of supervisory liability.'" (quoting *Starr v. Baca*, 652 F.3d at 1208)).  Without any specific allegation that these Defendants knew of and deliberately disregarded a risk to Plaintiff, the Eighth Amendment claims are insufficient.  Accordingly, the Court **DISMISSES** the Eighth Amendment claims against Defendants Madden, Allison, and Haas for failure to state a claim pursuant to 28 U.S.C. § 1915A.

## II.     Fourteenth Amendment Claims

Plaintiff also brings Fourteenth Amendment equal protection claims against Defendants Enfield and Haas. (*See* Compl. at 13–15.)  According to Plaintiff, Enfield "subjected Plaintiff to discrimination" by denying him adequate medical treatment and Haas "deprived Plaintiff of Equal Protection of Laws" by refusing to enforce prison healthcare policies, failing to supervise Enfield, and failing to provide Plaintiff with a licensed physician. (*Id*. at 13.)  At the end of his Complaint, Plaintiff also briefly states that he "incorporates by refer[e]nce all claims herein that *each named defendant* violated [Plaintiff's] 8th and 14th Amendment right(s)," but he fails to explain how the other Defendants violated the Equal Protection Clause of the Fourteenth Amendment. (*Id*. at 14 (emphasis added).)

The Equal Protection Clause of the Fourteenth Amendment requires persons who are similarly situated to be treated alike.  *See City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985); *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020).  A plaintiff can state an equal protection claim by setting forth facts which plausibly allege

that a defendant intentionally discriminated against them based on their membership in a protected class. *See Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013); *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994) ("Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status."). An individual may be a member of a protected class based on their "race, alienage, national origin, or sex," for example. *See Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005); *see also Cleburne,* 473 U.S. at 446 (recognizing disability as a protected characteristic under the Equal Protection Clause). And, at least in the Title VII context, the Supreme Court has interpreted sex to include gender identity. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1744 (2020) ("When an employer fires an employee for being homosexual or transgender, it necessarily and intentionally discriminates against that individual in part because of sex."); *accord Romer v. Evans*, 517 U.S. 620, 631–35 (1996) (recognizing sexual orientation as a protected characteristic under the Equal Protection Clause).

Plaintiff asserts, in the context of his Eighth Amendment claim, that he is "mentally ill, disabled, [and] non-binary transgender." (Compl. at 4.) Under his Fourteenth Amendment claim, however, Plaintiff does not allege membership in any protected class; nor does he allege that Enfield, Haas, or any other Defendants intentionally discriminated against him based on his membership in a protected class. Accordingly, the Court **DISMISSES** the Fourteenth Amendment claims against all Defendants for failure to state a claim pursuant to 28 U.S.C. § 1915A.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**CONCLUSION**

For the reasons set forth above, the Court:

(1) **DISMISSES** Plaintiff's Eighth Amendment claims against Defendants Madden, Allison, and Haas **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A;

(2) **DISMISSES** Plaintiff's Fourteenth Amendment claims against all Defendants **WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A;

(3) **DIRECTS** the Clerk of Court to terminate Defendants Madden, Allison, and Haas from the Court's docket; and

(4) **DIRECTS** the Clerk of the Court to issue a summons upon Defendants Salazar, Taylor, Lugo, and Enfield pursuant to Fed. R. Civ. P. 4(b), and forward it to Plaintiff together with certified copies of his Complaint (ECF No. 1) and blank AO 399 Waiver of Service of Summons Forms so that he may notify Defendants that an action has been commenced against them and request each Defendant waive personal service pursuant to Fed. R. Civ. P. 4(d)(1).

**It is further Ordered that:**

(5) Within 90 days of this Order,[5] Plaintiff must properly execute service upon each Defendant either by filing with the Clerk of the Court an executed waiver on behalf of each Defendant, or by filing proof of personal service of both the Complaint and summons upon each Defendant pursuant to Fed. R. Civ. P. 4(*l*) should that Defendant fail to sign and return his properly requested waiver.

---

[5] The Court has tolled Rule 4(m)'s service clock while it conducted its mandatory screening duties pursuant to 28 U.S.C. § 1915A. *See Butler v. Nat'l Cmty. Renaissance of California,* 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]–day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes service of process") (citing *Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010); *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 459 (3d Cir. 1996)); *see also Much v. Langston*, No. CV 16-0863 VAP (SS), 2018 WL 5905827, at *7 (C.D. Cal. Oct. 23, 2018) ("In cases where a court is required to screen a complaint before it may be served, it is generally accepted that the service deadline prescribed by Rule 4(m) does not begin to run until the date the court authorizes service of the complaint."), *report and recommendation adopted*, No. CV 16-0863 VAP (SS), 2018 WL 5906044 (C.D. Cal. Nov. 9, 2018).

Should Plaintiff fail to properly serve the Defendants within 90 days, the Court will order him to show cause why his case should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

**IT IS SO ORDERED**.

Dated: June 5, 2023

_____
Honorable Todd W. Robinson
United States District Judge